## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>hhgregg, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-01302-11<br><br>(Joint Administration Requested) |

### DEBTORS' FIRST DAY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION AMOUNTS OWED TO COMMON CARRIERS AND CUSTOMS BROKERS

hhgregg, Inc. and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the payment of prepetition amounts owed to certain common carriers. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Kevin Kovacs in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2] In further support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are Sections 105(a), 363(b),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 4151 E. 96th Street, Indianapolis, IN 46240.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

4.      The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner, and no official committee has been established in these chapter 11 cases.

6.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

7.      By this Motion, the Debtors seek entry of an order authorizing, but not directing, the Debtors to pay, in their sole discretion, prepetition amounts owed to certain domestic and international common carriers, shippers, freight forwarders, truckers, consolidators and customs brokers (collectively, the "Common Carriers") that the Debtors use for the shipment, transport, delivery and storage of goods in the ordinary course of the Debtors' business.

8.      As of the Petition Date, the Debtors owned and operated 220 brick-and-mortar stores offering furniture, appliances and electronics in 20 states under the names hhgregg and Fine Lines. The Debtors' stores carry approximately 350 models of major appliances in stock and a large selection of consumer electronics, computing and wireless products, home furniture,

mattresses and fitness equipment (the "Merchandise"). In connection with the normal operation of their business, the Debtors rely upon the Common Carriers to obtain, store and transport the Merchandise. In some cases, the Debtors hold title to the Merchandise in transit.

9. The Debtors' business operations and the success of these Chapter 11 cases depend on the delivery of the Merchandise in a timely manner. If the Common Carriers discontinue or delay shipping the Merchandise, the Debtors' inventory levels will fall substantially and disrupt the Debtors' reorganization. More importantly, the Debtors will be unable to sell such Merchandise, and, accordingly, unable to maintain cash flow required to operate their business and maximize the value of such assets for the benefit of their creditors. Thus, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm to the estates.

10. As of the Petition Date, the approximate retail value of the Merchandise ordered and either awaiting transit or in transit to the Debtors' stores and distribution centers exceeds the total amount owing to the Common Carriers, and the maximum amount required to obtain or deliver the Merchandise is approximately $2,000,000 (the "Common Carrier Claims").

**BASIS FOR RELIEF**

**A.  Paying Common Carriers Claims is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

11. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, and may pay prepetition claims if necessary for the debtor to fulfill that duty. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that preplan satisfaction of prepetition

claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

12. The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtors' fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

13. Here, payment of the Common Carrier Claims meets each prong of the *CoServ* test. First, as described in the above, the Debtors rely on the Common Carriers for delivery of the Merchandise in a timely manner. Without the Common Carriers, the Debtors would be unable to obtain and sell such Merchandise, and, accordingly, unable to maintain cash flow required to operate their business and maximize the value of such assets for the benefit of their creditors. Second, due to the difficulty associated with finding alternate sources for delivery of the Merchandise, the potential harm and economic disadvantage that would stem from the failure of any of the Common Carriers to perform, as further described above, is disproportionate to the amount of any Common Carrier Claims sought to be paid. Third, with respect to each of the Common Carrier Claims, the Debtors have examined other legal options short of payment of such Common Carrier Claims and have determined that there exists no practical or legal alternative to payment of the Common Carrier Claims.

B.     **Payment of the Common Carrier Claims Is Appropriate Under Section 363(b).**

14.     Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that a "debtor must articulate some business justification, other than mere appeasement of major creditors").

15.     Once a debtor has articulated a valid business justification, there "'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  This business judgment rule applies in chapter 11 cases like these. *Id.* (noting that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11").  *See In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004) (recognizing that payment of prepetition claims may be permitted under section 363, but holding that the debtor's evidentiary record did not support paying the prepetition claims of vendors).

16.     In *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004), the Seventh Circuit stated that a debtor may be able to use section 363(b)(1) of the Bankruptcy Code to pay prepetition claims "in order to keep 'critical' supplies flowing." *Id.* at 872.  The Seventh Circuit held, however, that such prepetition payments were not proper there because the debtor had not shown that "but

for immediate full payment, vendors would cease dealing; and that the business will gain enough from continued transactions with the favored vendors to provide some residual benefit to the remaining disfavored creditors, or at least leave them no worse off." *Id.* at 868.  In analogizing to "cram down" analysis, the Seventh Circuit looked to the benefit or enhancement of the estate that will result from the payment of a prepetition claim, stating that "if the impaired class does at least as well as it would have under a Chapter 7 liquidation, then it has no legitimate objection and cannot block the reorganization." *Id.* at 872–73.

17. Just as paying certain critical vendors is essential to keep the Merchandise flowing to the Debtors' stores and keep the Debtors' businesses running, so too is paying the Common Carriers that deliver that merchandise.  As noted above, the value of the Merchandise in the possession of the Common Carriers, as well as the potential harm to the Debtors' estates and the reorganization process if the goods are not released or timely delivered or sold, exceeds the amount of any prepetition shipping and storage charges.  Indeed, as set forth above, if the Debtors do not continue to receive Merchandise on a timely and uninterrupted basis, their operations will be immediately and substantially impeded, damaging the Debtors estates and, ultimately, resulting in a lower recovery to the Debtors' creditors.

18. Furthermore, the Debtors anticipate that the Common Carriers may argue that they are entitled to possessory liens for transportation and/or storage of Merchandise in their possession and are likely to refuse to deliver or release such goods before their liens have been satisfied.  Under the laws of certain states, a carrier may have a prior lien on the goods in its possession to secure the charges or expenses incurred in connection with the transportation or storage of such goods.  Pursuant to section 363(e) of the Bankruptcy Code, such a carrier would be entitled to adequate protection of such a valid possessory lien. Accordingly, paying the

Common Carrier Claims would leave other creditors in no worse position than they would be if the Common Carrier Claims remain unpaid.

19. Courts in other districts have authorized the payment of common carrier charges and related fees in other large Chapter 11 cases. *See e.g., In re Golfsmith Int'l Holdings, Inc.*, Case No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016); *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016); *In re Radioshack Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del. Feb. 2, 2015); *In re dELiA*s, Inc.*, Case No. 14-23678 (RDD) (Bank. S.D.N.Y. Dec. 24, 2014); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008); *In re Lillian Vernon Corp.*, Case No. 08-10323 (BLS) (Bankr. D. Del. Feb. 21, 2008); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); *In re Global Motorsport Group, Inc.*, Case No. 08-10192 (KJC) (Bankr. D. Del Feb. 1, 2008). The Debtors respectfully submit that similar authorization is appropriate in these Chapter 11 cases.

20. Accordingly, the Debtors seek an order authorizing, but not directing, them to pay the Common Carriers in order to obtain the release or transport of any Merchandise held by, or to be shipped by, such Common Carriers. The Debtors seek authority to make such payments in the amounts and to the extent necessary to satisfy non-disputed prepetition shipping and storage charges, and to satisfy any possessory liens on the Merchandise that may be held by a Common Carrier pending payment of such charges.

21. The Debtors shall only pay shipping and storage charges where, in their business judgment, such payments will benefit the estates and their creditors, taking into account: (i) the costs the estates would incur by bringing an action to compel turnover of such goods; (ii) the disruption associated with such actions; and (iii) the costs of any delay in the supply chain.

22. Authorization to pay the shipping and storage charges will not be deemed to constitute an assumption of any agreement pursuant to Section 365 of the Bankruptcy Code, and the Debtors reserve all of their rights under the Bankruptcy Code with respect to any such agreements. Moreover, authorization to pay the shipping and storage charges does not affect the Debtors' right to contest the amount or validity of any such charges, in whole or in part.

**C.    Request for Finding of Satisfaction of Bankruptcy Rule 6003(b)**

23. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.

24. Failure to satisfy obligations with respect to the Common Carriers in the ordinary course of business at the outset of these Chapter 11 cases will jeopardize the Debtors' ability to maximize their assets for the benefit of their creditors. The Debtors' estates would therefore be immediately and irreparably harmed.

25. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support payment of their Common Carrier obligations.

26. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors and all parties in interest.

**D.    Request for Waiver of Stay**

27. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." As set forth above, the payment of the shipping and storage charges is essential to prevent potentially irreparable damage to the

Debtors' estates. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Rule 6004(h), to the extent it applies.

## NOTICE AND NO PREVIOUS REQUEST

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of Indiana; (ii) the Debtors' thirty (30) largest unsecured creditors; and (iii) counsel to the Agent for the Debtors' prepetition secured lenders and the lenders providing debtor in possession financing, c/o Sean M. Monahan, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule B-9013-3(d). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

29. No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**
Neil E. Herman (*pro hac vice* pending)
Rachel Jaffe Mauceri (*pro hac vice* pending)
Katherine L. Lindsay (*pro hac vice* pending)
101 Park Avenue
New York, New York 10178
Telephone:  (212) 309-6000
Neil.Herman@morganlewis.com
Rachel.Mauceri@morganlewis.com
Katherine.Lindsay@morganlewis.com

-and-

/s/ Jeffrey A. Hokanson
**ICE MILLER LLP**
Jeffrey A. Hokanson (No. 14579-49)
Sarah L. Fowler (No. 30621-49)
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone:  (317) 236-2100
Jeff.Hokanson@icemiller.com
Sarah.Fowler@icemiller.com

*Proposed Counsel to the Debtors and Debtors in Possession*