**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>hhgregg, Inc., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 17-01302-11<br><br>(Joint Administration Requested) |

**DEBTORS' FIRST DAY MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b)(9), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

      hhgregg, Inc. and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors to pay prepetition claims held by critical vendors (the "Critical Vendors") in an aggregate amount not to exceed $8,000,000 (the "Critical Vendor Cap") and (ii) authorizing the Debtors' banks and financial institutions (collectively, the "Banks") to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Kevin J. Kovacs in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 4151 E. 96th Street, Indianapolis, IN 46240.

Declaration").[2] In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

**A.**  **General**

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3. The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner, and no official committee has been established in these chapter 11 cases.

5. Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**B.      Critical Vendors**

6.      As of the Petition Date, the Debtors owned and operated 220 brick-and-mortar stores offering furniture, appliances and electronics in 19 states under the names hhgregg and Fine Lines. The Debtors' stores carry approximately 350 models of major appliances in stock and a large selection of consumer electronics, computing and wireless products, home furniture, mattresses and fitness equipment. If the delivery of products to the Debtors is stopped or delayed for even one day, the Debtors could not operate their stores. Without a full supply of inventory, the Debtors would be extremely disadvantaged in a highly competitive market segment and would suffer swift attrition in customer patronage, which would be difficult, if not impossible, to restore. The Debtors' business depends on, among other things, the Debtors' ability to retain their vendors and maintain their reputation and customer loyalty. The Debtors need to be able to assure their customers, vendors, and employees that, notwithstanding the filing of these chapter 11 cases, they will continue to operate at the highest level.

7.      To identify the Critical Vendors, the Debtors have reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria: (i) whether certain quality specifications or other requirements of the Debtors' customers prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (ii) whether, if a vendor is not a single-source supplier, the Debtors have sufficient product in inventory to continue their operations while a replacement vendor is put in place; and (iii) whether a vendor meeting the foregoing criteria is able or likely to refuse to ship products to the Debtors postpetition if its prepetition balances are not paid.

C.  **Critical Vendor Claims**

8. It is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, the Critical Vendors in light of the critical role that they play in the day-to-day operation of the Debtors' business. In addition, certain of the Critical Vendors are likely entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business within the 20-day period immediately prior to the Petition Date. Accordingly, to prevent the commencement of these chapter 11 cases from causing an unexpected or inopportune interruption to their business operations, the Debtors are seeking authority, in their sole discretion, to pay prepetition claims held by Critical Vendors (the "Critical Vendor Claims") up to the Critical Vendor Cap. While the Debtors reserve the right to seek Court authority at a later date to increase the Critical Vendor Cap, payment of the amounts specified herein would allow the Debtors to obtain those goods and services most necessary to operating the Debtors' stores.

9. In determining the amount of the Critical Vendor Cap, the Debtors carefully reviewed all of their vendors to determine which vendors could meet the stringent criteria used to identify the universe of potential Critical Vendors. Consequently, the Critical Vendor Cap represents the Debtors' best estimate of the prepetition claims that should be paid immediately to ensure a continued supply of critical goods and services.

10. Given the current state of the Debtors' business, the detailed protocol described below for determining whether to make a Critical Vendor payment, the risks associated with non-payment, and the fact that certain of the Critical Vendor Claims are likely entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code, the Debtors

submit that the Critical Vendor Cap is reasonable and appropriate caps on the expenditure of estate funds to satisfy certain prepetition claims.[3]

**D.     Terms and Conditions for Payment of Critical Vendor Claims**

11.     In return for paying the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide favorable trade terms in line with historical practices for the postpetition delivery of goods and services or otherwise continue to supply the Debtors with essential goods and services for the duration of these chapter 11 cases. The Debtors therefore request authority, but not direction, to condition the payment of Critical Vendor Claims upon the Critical Vendor's written agreement to continue supplying goods or services to the Debtors in accordance with trade terms that are at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place prior to the Petition Date (the "Customary Trade Terms").

12.     The Debtors also reserve the right to negotiate trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors determine, in their reasonable business judgment, that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

13.     The Debtors may elect to condition the payment of Critical Vendor Claims upon such party's agreement to continue supplying goods or services on Customary Trade Terms or Negotiated Trade Terms for the duration of these chapter 11 cases by executing trade agreements (each, a "Trade Agreement"). Such Trade Agreements, once agreed to and

---

[3] Nothing in this Motion should be construed as a waiver by the Debtors of their right to contest any invoices of a Critical Vendor under the Bankruptcy Code or applicable non-bankruptcy law.

accepted by a Critical Vendor, shall be legally binding contractual arrangements governing the commercial trade relationship between the parties as provided therein.

14. In addition to negotiating Trade Terms and Trade Agreements, the Debtors may reduce Critical Vendor Claims by means other than cash payment. For example, to the extent consistent with documents providing debtor in possession financing or otherwise with the consent of the lenders extending such debtor in possession financing, the Debtors may return merchandise to Critical Vendors in order to reduce such Critical Vendors' prepetition claims.

15. The Debtors also seek authority, but not direction, to pay the claim of a Critical Vendor that threatens to withhold goods or services unless its prepetition claim is paid if the Debtors conclude, in their reasonable business judgment, that such payment is necessary for the preservation of the Debtors' estates; *provided, however*, that any such payments will be subject to the Critical Vendor Cap. Additionally, the Debtors request that, if a Critical Vendor accepts payment pursuant to an order granting the relief requested in this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms or Negotiated Trade Terms (regardless of whether a Trade Agreement has been executed), (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtors' reasonable business judgment, to be an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made. If there exists an outstanding postpetition balance due from the Debtors to such vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and such Critical Vendor will be required to repay the Debtors such paid

amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## RELIEF REQUESTED

16. The Debtors seek entry of an order (i) authorizing, but not directing, the Debtors to pay the Critical Vendors Claims up to the Critical Vendor Cap and (ii) authorizing the Banks to honor and pay all checks and electronic transfer requests for payment of such Critical Vendor Claims.

## BASIS FOR RELIEF

**A.  Paying Critical Vendor Claims Is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

17. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, and may pay prepetition claims if necessary for the debtor to fulfill that duty. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

18. The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtors' fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

19.  Here, payment of the Critical Vendor Claims meets each prong of the *CoServ* test. First, as described in the protocol above, the Debtors have narrowly tailored the definition of "Critical Vendors" to encompass only those vendors that provide essential goods or services and will refuse to provide those goods or services absent payment of their prepetition claims. Second, due to the difficulty associated with finding alternate sources for the critical goods and services, the potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform, as further described above, is disproportionate to the amount of any Critical Vendor Claim sought to be paid. Third, with respect to each of the Critical Vendor Claims, the Debtors have examined other legal options short of payment of such Critical Vendor Claims and have determined that there exists no practical or legal alternative to payment of the Critical Vendor Claims.

**B.    Payment of the Critical Vendor Claims Is Appropriate Under Section 363(b).**

20.  Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that a "debtor must articulate some business justification, other than mere appeasement of major creditors").

21.  Once a debtor has articulated a valid business justification, there "'is a presumption that in making a business decision the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). This business judgment rule applies in chapter 11 cases like these. *Id.* (noting that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11"); *See In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004) (recognizing that payment of prepetition claims may be permitted under section 363, but holding that the debtor's evidentiary record did not support paying the prepetition claims of vendors); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon section 363 is "completely consistent with the Bankruptcy Code" and payments to critical trade vendors have further support when debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include the payment of a prepetition obligation").

22.     In *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004), the Seventh Circuit stated that a debtor may be able to use section 363(b)(1) of the Bankruptcy Code to pay prepetition claims "in order to keep 'critical' supplies flowing." *Id.* at 872. The Seventh Circuit held, however, that such prepetition payments were not proper there because the debtor had not shown that "but for immediate full payment, vendors would cease dealing; and that the business will gain enough from continued transactions with the favored vendors to provide some residual benefit to the remaining disfavored creditors, or at least leave them no worse off." *Id.* at 868. In analogizing to "cram down" analysis, the Seventh Circuit looked to the benefit or enhancement of the estate that would result from the payment of a prepetition claim, stating that "if the impaired class does at least as well as it would have under a Chapter 7 liquidation, then it has no legitimate objection and cannot block the reorganization." *Id.* at 872–73.

23. Thus, following the *Kmart* decision, courts in the Seventh Circuit have authorized the payment (or other special treatment) of prepetition obligations to critical vendors in appropriate circumstances. *See, e.g.*, *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. March 6, 2015) (authorizing payments to critical vendors); *In re Edison Mission Energy*, Case No. 12-49219 (Bankr. N.D. Ill. Jan. 17, 2013) (same); *In re Ryan Int'l Airlines, Inc.*, Case No. 12-80802 (Bankr. N.D. Ill. Mar. 7, 2012) (same); *In re Grede Foundries, Inc.*, Case No. 09-14337 (Bankr. W.D. Wis. Aug. 31, 2009) (same). In authorizing such payments, those courts generally relied on the legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code. The Court should follow that precedent and authorize the Debtors to pay the Critical Vendors Claims up to the Critical Vendor Cap.

24. As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that the goods and services provided by the Critical Vendors are vital to the Debtors' continuing business operations, and such Critical Vendors will not deliver goods if their Critical Vendor Claims are left unpaid throughout the duration of these chapter 11 cases. *See Kmart*, 359 F.3d at 873. As such, the failure to honor their prepetition obligations to the Critical Vendors could have a significant adverse effect on the Debtors' continued operation and their ability to maximize the value of their estates. Accordingly, the preservation and protection of the Debtors' business through ongoing relationships with the Critical Vendors provides a sufficient business justification for payment of Critical Vendor Claims, even if such payments were deemed to be outside the ordinary course of business. *See Ionosphere Clubs*, 98 B.R. at 17.

25. The Debtors, therefore, seek authorization under section 363(b) of the Bankruptcy Code to pay the Critical Vendor Claims.

C. **Payment of Critical Vendor Claims Now That are Entitled to Priority Status Will Have No Effect on Creditor Recoveries In These Chapter 11 Cases.**

26. As stated previously, certain of the Critical Vendor Claims are likely entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code. Because such claims are likely entitled to priority status under section 503(b)(9) of the Bankruptcy Code, the Debtors must pay the claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority). Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay. Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. Thus, payment of Critical Vendor Claims that are entitled to 503(b)(9) status only affects the timing, but not the amount, of payment. Payment of such Critical Vendor Claims therefore leaves vendors not determined to be Critical Vendors just as well off as if an order allowing the Debtors to pay the Critical Vendor Claims had not been entered. *See Kmart*, 359 F.3d at 873. As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay such claims in an amount not to exceed the Critical Vendor Cap.

D. **Request for Authority for Banks to Honor and Pay Checks in Connection Herewith**

27. In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or fund transfer

requests were submitted before or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of obligations described herein. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

28.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

E.     **Request for Finding of Satisfaction of Bankruptcy Rule 6003(b)**

29.     Under Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may authorize the Debtors to satisfy the Critical Vendor Claims because such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008) (finding that the debtor had satisfied the standard of Bankruptcy Rule 6003(b) where "immediate relief [was] necessary to avoid irreparable harm" and ordering that the debtor could make expenditures related to certain prepetition customer obligations).

30.     As described above and in the First Day Declaration, the continuity and viability of the Debtors' business operations relies heavily on the uninterrupted delivery of essential merchandise and supplies. The failure of any Critical Vendor to deliver essential merchandise or supplies to the Debtors would have immediate and detrimental consequences to the Debtors'

businesses and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders. The Debtors cannot risk even the perception that their stores will offer anything but a wide selection of high-quality merchandise for the duration of these chapter 11 cases. Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Critical Vendors is critical to their continued operations and greatly increases the likelihood of successfully prosecuting these chapter 11 cases.

31.     Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and that, therefore, Bankruptcy Rule 6003 is satisfied.

**F.     Request for a Waiver of Bankruptcy Rule 6004(h)**

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as any delay in satisfying the Critical Vendor Claims would jeopardize the Debtors' business operations and their efforts in connection with these chapter 11 cases, to the detriment of their estates and creditors.

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

**G.     Reservation of Rights**

34.     Nothing in this Motion or the proposed order attached hereto (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their

estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Critical Vendor; or (iv) shall be construed as a promise to pay a claim.

## NOTICE AND NO PREVIOUS REQUEST

35. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of Indiana; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; (v) the Prepetition Secured Parties; and (vi) counsel to the Agent for the Debtors' prepetition secured lenders and the lenders providing debtor in possession financing, c/o Sean M. Monahan, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule B-9013-3(d). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

36. No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the order substantially in the form annexed hereto as Exhibit A, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**
Neil E. Herman (*pro hac vice* pending)
Rachel Jaffe Mauceri (*pro hac vice* pending)
Katherine L. Lindsay (*pro hac vice* pending)
101 Park Avenue
New York, New York 10178
Telephone:  (212) 309-6000
Neil.Herman@morganlewis.com
Rachel.Mauceri@morganlewis.com
Katherine.Lindsay@morganlewis.com

-and-

/s/ Jeffrey A. Hokanson
**ICE MILLER LLP**
Jeffrey A. Hokanson (No. 14579-49)
Sarah L. Fowler (No. 30621-49)
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone:  (317) 236-2100
Jeff.Hokanson@icemiller.com
Sarah.Fowler@icemiller.com
Telephone:  (317) 236-2100

*Proposed Counsel to the Debtors and Debtors in Possession*