**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| hhgregg, Inc., *et al.*,[1] | Case No. 17-01302-JJG-11 |
| Debtors. | (Joint Administration) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)
APPROVING SETTLEMENT AGREEMENT WITH THE TRAVELERS
INDEMNITY COMPANY AND (II) GRANTING RELATED RELIEF**

hhgregg, Inc. and its above-captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), hereby move the Court (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule B-9019-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules"), approving a settlement by and among the Debtors and The Travelers Indemnity Company and certain of its property casualty insurance and claim service company affiliates ("Travelers," and together with the Debtors, the "Parties"), resolving the disposition of remaining collateral held as security by Travelers in connection with certain workers' compensation, general liability and automobile insurance policies (the "Settlement" or "Settlement Agreement").  A copy of the Settlement Agreement is attached hereto as **Exhibit B**. In support of this Motion, the Debtors respectfully state as follows

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 4151 E. 96th Street, Indianapolis, IN 46240.

## PRELIMINARY STATEMENT[2]

1.     The proposed Settlement with Travelers is highly advantageous to the Debtors' estates and should be approved.  The Settlement focuses on the disposition of approximately $1.93 million in collateral held and used by Travelers to backstop hhgregg, Inc.'s (the Debtor counterparty) contractual obligations certain insurance policies and related agreements. Although the coverage period ended years ago in November 2014, Travelers continues to work through workers' compensation claims incurred in the normal course of the Debtors' business and there is no firm end date when all such claims will be liquidated on a final basis.  The unliquidated nature of the remaining claims also prevents precise determination of the collateral needed to satisfy premiums and contractual loss reimbursement obligations.  But instead of tying up unnecessarily the entirety of the collateral for months if not years, the Parties entered into good faith negotiations the last several months to work through the various contingencies and risk profiles to reduce the collateral to an acceptable level.

2.      These efforts have been successful.  Under the proposed Settlement, the Debtors would see over $1.2 million in cash promptly returned to the estates and will incur no additional liability under the Travelers' policies.  Travelers can only look to the balance of the retained collateral to satisfy actual losses as the remaining workers' compensation claims are liquidated. The Parties also agree to mutual releases, and the Travelers Proof of Claim (defined below) would be deemed satisfied in full if the Settlement is approved.  Given the number of contingencies at stake, the much-needed return of about 65% of the collateral represents an excellent outcome for the Debtors' estates.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

3.     Based on the foregoing, and as set forth in more detail in this Motion, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.     The statutory and legal predicates for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule B-9019-1.

## BACKGROUND

6.     On March 6, 2017 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession.  No trustee or examiner has been appointed in these cases.

7.     On March 10, 2017, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

8.     As of the Petition Date, the Debtors operated 220 brick-and-mortar stores offering furniture, appliances, and electronics in 19 states under the names hhgregg and Fine Lines.  As of the date of this Motion, the Debtors have liquidated their store assets through going-out-of-business sales.  The Debtors, together with the Committee, are in the process of monetizing all other material assets.

**A.     The Travelers Insurance Policies and the Debtor's Collateral**.

9.     Prior to the Petition Date, Travelers issued certain workers' compensation, general liability, and automobile liability insurance policies (together, the "Travelers Policies") for the benefit of Debtor, hhgregg, Inc. ("hhgregg") and certain of its affiliated debtors

(collectively, the "Insureds").  The relevant period covered by the Travelers Policies spanned from November 1, 2003 through November 1, 2014.  In addition, certain program agreements and related materials were entered into by Travelers and hhgregg that governed the insurance relationship with the Insureds under the policies (the "Program Agreement").

10.    For certain of the Travelers Policies, the hhgregg's premiums and loss reimbursement obligations were determined, in part, by actual losses experienced by the Insureds.  And such premiums and other obligations were backed by both cash collateral and a letter of credit posted by hhgregg.  As of the date hereof, Travelers is holding $1,935,426.00 in cash collateral (the "Collateral"), consisting of cash in the amount of $91,798.00 and cash proceeds from the letter of credit in the amount of $1,843,628.00.

11.    On November 3, 2017, Travelers filed proof of claim no. 1165 against hhgregg asserting a secured claim in the amount of $91,798.00 and an unliquidated general unsecured claim (the "Travelers Proof of Claim").

**B.    The Proposed Settlement Resolving the Disposition of the Collateral.**

12.    Over the past several months the Parties engaged in good-faith negotiations to determine the amount of Collateral that should be returned to the Debtors and the amount retained by Travelers to satisfy the hhgregg's contractual obligations under the Travelers Policies and the Program Agreement.

13.    In substance, the Settlement provides substantial upside for the Debtors in the form of released Collateral funds, mutual releases, and full and complete satisfaction of the Travelers Proof of Claim.  A summary of these and other key provisions of the Settlement Agreement are as follows:[3]

---

[3] The summary of the Settlement Agreement contained herein (including throughout the balance of the Motion) is for discussion purposes only, and in all cases, the terms of the Settlement Agreement itself shall govern.

- <u>Release of the Collateral Funds</u>.  Subject to the Effective Date, Travelers will release $1,247,500.00 of the Collateral to the hhgregg's estate (the "<u>Settlement Amount</u>").  The remaining balance, $687,926.00, will be retained by Travelers to satisfy hhgregg's remaining obligations under the Travelers Policies and the Program Agreement (the "<u>Retained Collateral</u>").

- <u>Payment of the Collateral Funds</u>. Travelers will pay the Settlement Amount within 15 business days after the Effective Date by wire transfer, in immediately available funds, to hhgregg in care of Debtor Gregg Appliances (in accordance with wire instructions already provided to Travelers).  Travelers will be authorized to retain the Retained Collateral upon hhgregg's receipt of the Settlement Amount.

- <u>Travelers Proof of Claim</u>.  Upon the Effective Date, the Travelers Proof of Claim shall be deemed allowed and satisfied in full pursuant to the terms of the Settlement, and the Debtors' claims agent is authorized to update the claims register accordingly.

- <u>No Further Monetary Obligations</u>.  The Debtors will have no further monetary obligations under the Travelers Policies or the Program Agreement, and Travelers will look solely to the Retained Collateral for payment of any outstanding obligations under these agreements. Travelers, in turn, will have no further obligations to the Insureds under the Travelers Policies or the Program Agreement.  Throughout the remaining liquidation process, hhgregg and the other Insureds will continue to cooperate with Travelers in the investigation and administration of claims, and deliver upon request "reasonably available information" in the Insureds' possession, custody or control, pursuant to Paragraph 11 of the Settlement Agreement.

- <u>Mutual Releases</u>.  Upon the Effective Date (and in the case of the Debtors, upon hhgregg's receipt of the Settlement Amount), the Settlement provides for the mutual release of all claims by and among the Debtors and Travelers except for the claims, rights and/or obligations arising under the Settlement Agreement.

## **<u>RELIEF REQUESTED</u>**

14.    The Debtors seek the entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 9019 and Local Rule B-9019-1, (a) approving the Settlement Agreement attached hereto as **<u>Exhibit B</u>**, and the Settlement described therein, and (b) authorizing and empowering the Debtors to settle the disposition of the Collateral as set forth

herein, pursuant to the terms set forth in the Settlement Agreement, and to take all steps necessary to carry out and otherwise effectuate the terms, conditions, and provisions of the Settlement Agreement.

## **BASIS FOR RELIEF REQUESTED**

15.     Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16.     In describing the standard for evaluating a settlement under Bankruptcy Rule 9019, the United States Court of Appeals for the Seventh Circuit has stated that settlements may be approved if they are in the best interests of the estate.  *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007).  A focal point of this analysis "is a comparison of the value of the settlement with the probable costs and benefits of litigating."  *Id*.  A number of factors often considered by courts in evaluating a proposed settlement include the "litigation's probability of success, complexity, expense, inconvenience, and delay, including the 'possibility that disapproving the settlement will cause a wasting of assets.'"  *Id*. (citations omitted).

17.     The analysis under Bankruptcy Rule 9019 is <u>ultimately</u> whether the settlement at issue "falls below the low end [of the range] of possible litigation outcomes." *Id. See also*, *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 801-02 (7th Cir. 2012) (holding that where one possible outcome was that the estate would receive nothing, a settlement giving it 50 percent of the value of the asset in question was reasonable).

18.     While the Court must "determine whether the proposed [settlement] is fair and equitable and in the best interest of the estate[,]" the Court is not required to conduct a full

evidentiary hearing regarding the propriety of settlement. *Depoister v. Mary M. Holloway Found*, 36 F.3d 582, 586-87 (7th Cir. 1994) (stating "[i]t is clear that Rule 9019(a) itself does not expressly obligate the court to hold an evidentiary hearing prior to approving a compromise under Rule 9019(a)."). Stated differently, in reaching a decision on whether to approve a settlement, the Court must make an informed and independent judgment but need not make an independent investigation of the facts, and it may give weight to the trustee's informed judgment and consider the competency and experience of counsel supporting the compromise. *Id.* at 587-88; *Matter of Rimsat, Ltd.*, 224 B.R. 685, 688 (Bankr. N.D. Ind. 1997) (citations omitted).

19. The Debtors endorse the Settlement as it easily satisfies the criteria governing approval Bankruptcy Rule 9019. The Debtors' negotiations with Travelers over the last several months focused on a ranged of contingencies—primarily focused on workers' compensation claims—under the Travelers Policies and Program Agreement that ultimately influenced the Settlement Amount. As noted above, premiums and loss reimbursements of contractual amounts under the Travelers Policies and the Program Agreement hinge on actual losses incurred by the Insureds. But actual losses will not be known with certainty until all claims under the policies have been liquidated and/or reconciled. This process has been underway since coverage concluded on November 1, 2014 and it is not yet clear what additional time would be necessary to achieve finality. Thus, negotiations weighed factors that included the number of remaining workers' compensation claims, the estimated liquidation value of such claims based on prior history, as well as an estimate of potential appeals of claim awards by workers' compensation claimants. These contingencies were also compared against the Collateral amount and the risk level Travelers was willing to bear related to unliquidated claims.

20.     A majority of the above contingencies were resolved in favor of the Debtors' estates.  The Settlement Amount—and its $1,247,500 in cash—constitutes about 65% of the Collateral held by Travelers.  And when coupled with the fact that the cash will be paid on the Settlement's Effective Date as opposed to months if not years down the road, the Debtors' firmly believe negotiations have yielded the best possible outcome under the circumstances.  What is more, the Debtors face no further monetary obligations under the Travelers Policies and Program Agreement, and the Travelers Proof of Claim is satisfied in full.

21.     For the foregoing reasons, the Debtors have determined that the Settlement is fair, equitable, in the best interests of the Debtors' estates, and well within the range of reasonableness for approval under Bankruptcy Rule 9019(a).   Accordingly, the Debtors respectfully submit that the Court should approve the Settlement Agreement.

## NOTICE

22.     Notice of this Motion will be separately provided to: (i) the U.S. Trustee; (ii) counsel to the Official Committee of Unsecured Creditors, and (iii) all intervening parties and counsel of record pursuant to that *Order Granting Debtors' Motion for Standing Order Limiting Notice (Doc. No. 1736)* dated November 3, 2017 (Doc. No. 1810).  The Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached as **Exhibit A**, granting the relief requested herein and granting all other just and proper relief.

[Signature on following page]

Dated: February 6, 2020

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**
Craig A. Wolfe
Jason R. Alderson
101 Park Avenue
New York, NY 10178
Telephone:  (212) 309-6000
craig.wolfe@morganlewis.com
jason.alderson@morganlewis.com

-and-

/s/ *Jeffrey A. Hokanson*
**ICE MILLER LLP**
Jeffrey A. Hokanson (No. 14579-49)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
jeff.hokanson@icemiller.com

*Counsel to the Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2020, I electronically filed the foregoing.  Notice of this filing will be sent to the parties who have requested to receive notice through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

/s/ *Jeffrey A. Hokanson*
Jeffrey A. Hokanson

**<u>EXHIBIT A</u>**

**<u>PROPOSED ORDER</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| hhgregg, Inc., *et al.*,[1] | Case No. 17-01302- JJG -11 |
| Debtors. | (Joint Administration) |

**ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF
AN ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH THE
TRAVELERS INDEMNITY COMPANY AND (II) GRANTING RELATED RELIEF**

This matter came before the Court on the *Motion of the Debtors for Entry of an Order (I) Approving Settlement Agreement With The Travelers Indemnity Company and (II) Granting Related Relief* [Dkt. No. _____] (the "Motion")[2] filed by hhgregg, Inc. and its above-captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"). A separate Notice of the Motion and Notice of Objection Deadline [Dkt. No. __] describing the Settlement and giving creditors, the U.S. Trustee and other parties in interest notice of the deadline for objections thereto—twenty-one (21) days from the date of service—in accordance with Bankruptcy Rule 2002(a), 9019(a) and Local Rule B-9019-1, was filed and served contemporaneously. The Court

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 4151 E. 96th Street, Indianapolis, IN 46240.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having reviewed the Motion; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iv) no objections were filed to the Motion, and (v) the terms of the proposed Settlement described in the Motion are fair and equitable; after due deliberation, the Court having determined that the relief requested in the Motion is necessary and appropriate and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and good and sufficient cause having been shown, now finds that the Motion should be granted. Accordingly, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Settlement Agreement attached to the Motion as **<u>Exhibit B</u>**, and the Settlement described therein, is approved pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 9019(a) and Local Rule B-9019-1.

3.      The Debtors are authorized and empowered to settle the claims set forth in the Motion with Travelers, pursuant to the terms set forth in the Settlement Agreement, and to take all steps necessary to carry out and otherwise effectuate the terms, conditions and provisions of the Settlement Agreement.

4.      This Order (including the Settlement Agreement attached as **<u>Exhibit B</u>** to the Motion), together with all of the findings of fact and conclusions of law contained herein and as set forth on the record of the hearing on the Motion, is and shall be final, binding and effective on all parties in interest in the Debtors' chapter 11 cases (including, but not limited to, any subsequently appointed chapter 11 or chapter 7 trustee or any representative of any of the Debtors' estates appointed pursuant to 11 U.S.C. § 1123), as well as on each of the Parties.

5.     This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation of this Order and the Settlement Agreement approved herein.

###

## EXHIBIT B

## SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT

This settlement agreement (the "**Agreement**") is entered into by and among hhgregg, Inc. (the "**Debtor**") and The Travelers Indemnity Company and certain of its property casualty insurance and claim service company affiliates ("**Travelers**"). The Debtor and Travelers may be referred to herein collectively as the "**Parties**" or each individually as a "**Party**".

## RECITALS

**WHEREAS**, on March 6, 2017 (the "**Petition Date**"), the Debtor and certain of its affiliates (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "**Bankruptcy Court**"), with such cases jointly administered and styled as *In re hhgregg, Inc. et al.*, Case No. 17-01302-RLM (the "**Bankruptcy Cases**");

**WHEREAS**, prior to the Petition Date, Travelers issued certain workers' compensation, general liability, and automobile liability insurance policies (together, the "**Travelers Policies**") for the benefit of the Debtor and certain of its affiliated debtors (collectively, the "**Insureds**") pursuant to which Travelers provided insurance to the Insureds for the period from approximately November 1, 2003 through November 1, 2014;

**WHEREAS**, the Travelers Policies were issued in conjunction with and pursuant to a series of additional agreements governing the relationship between Travelers and the Debtor as described therein (collectively, the "**Program Agreement**");

**WHEREAS**, certain of the Travelers Policies are loss-sensitive because premiums and loss reimbursement payment obligations reflect, in part, the actual loss experience of the Insureds. Actual premiums due and loss reimbursements due are determined by actual losses and expenses and by reimbursement of contractual amounts;

**WHEREAS**, pursuant to the Program Agreement, the Debtor's obligations under the Travelers Policies were backed by both cash collateral and a letter of credit. Travelers is holding

collateral in the total amount of $1,935,426.00 (the "**Collateral**"), consisting of cash in the amount of $91,798.00 and proceeds from the letter of credit in the amount of $1,843,628.00;

**WHEREAS**, Travelers filed Proof of Claim Number 1165 against the Debtor (the "**Travelers Claim**") in the Bankruptcy Cases asserting a secured claim in the amount of $91,798.00 and an unliquidated general unsecured claim;

**WHEREAS**, the Parties dispute the amount of the Collateral required to provide for the Debtor's obligations under the Travelers Policies and the Program Agreement and the amount of Collateral that should be returned to the Debtor's bankruptcy estate (the "**Dispute**"); and

**WHEREAS**, the Parties have exchanged information regarding the Dispute and now desire to amicably resolve the Dispute and all related matters pursuant to the terms and conditions set forth herein.

**NOW, THEREFORE**, after good faith, arm's length negotiations between the Parties, and in consideration of the foregoing Recitals and of the mutual promises, covenants, and releases hereinafter set forth and for other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged by the Parties, the Parties hereto agree as follows:

**AGREEMENT**

1.      Each of the Recitals set forth above is incorporated herein by reference.

2.      This Agreement is subject to and conditioned upon the entry of a Final Order (as defined herein) of the Bankruptcy Court approving this Agreement (the date on which the order approving this Agreement becomes a Final Order shall be referred to herein as the "**Effective Date**").  In the event that the Effective Date does not occur, this Agreement shall be deemed null and void and of no force or effect, and the Parties' rights, claims, and defenses with respect to the Travelers Claim, the Collateral, and the Dispute shall revert to their prior positions, without prejudice.  In such event, nothing (including the Recitals) contained in this Agreement, any motion,

2

or certification filed seeking an order from the Bankruptcy Court approving this Agreement, or any correspondence or other communications related to the negotiations, drafting, or approval of this Agreement, shall be argued or deemed to be an admission against any Party's interest in any litigation by and between any parties, and the Parties shall be automatically returned to their respective positions *status quo ante*.  As used herein, the term "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction approving this Agreement, provided that if the order or judgment is appealed or stayed within fourteen (14) days after its entry, the Effective Date shall not occur until such time as the stay has expired or has been lifted, and in the case of an appeal, the reviewing court with proper jurisdiction affirms the order or judgment and no timely subsequent appeal is taken seeking to reverse, stay, amend, or otherwise modify the order or judgment.

3.     Subject to the occurrence of the Effective Date, the Parties agree that Travelers shall: (i) retain $687,926.00 from the Collateral (the "**Retained Collateral**"); and (ii) pay from the Collateral to the Debtor's bankruptcy estate the aggregate amount of $1,247,500.00 (the "**Settlement Amount**") in full and final settlement of the Dispute.  The Parties shall effectuate this disposition of the Collateral in accordance with the procedures outlined below.

4.     Within fifteen (15) business days of the Effective Date, in full satisfaction of all financial obligations of each Party to the other Party under the Program Agreement and the Travelers Policies, including any claims for remittance of any portion of the Collateral, and in full and final settlement of the Dispute, Travelers shall pay the Settlement Amount in immediately available funds by wire transfer to the Debtor in care of Gregg Appliances, Inc. (in accordance with wire instructions to be provided to Travelers prior to the filing of a motion seeking the approval of this Agreement).

5.      Upon receipt of the Settlement Amount by the Debtor pursuant to Paragraph 4 of this Agreement, the Parties agree that Travelers shall retain the Retained Collateral.  Further, upon receipt by the Debtor of the Settlement Amount, Travelers may use, apply or otherwise dispose of the Retained Collateral in its sole discretion.

6.      Upon receipt of the Settlement Amount by the Debtor pursuant to Paragraph 4 of this Agreement, the Debtor shall not have any further monetary obligation to Travelers, Travelers shall not have any further monetary obligations to the Debtor, and Travelers shall look solely to the Retained Collateral for payment of any outstanding obligations under the Program Agreement.

7.      Upon the Effective Date, the (i) Travelers Claim shall be deemed allowed and satisfied in full in accordance with the terms of this Agreement; and (ii) claims agent designated in the Bankruptcy Cases shall update the Debtors' claims register to effectuate this Agreement including, without limitation, amending the claims register in the Bankruptcy Cases to reflect the terms of this Agreement and the satisfaction in full of the Travelers Claim.

8.      As of the Effective Date, Travelers hereby irrevocably waives and releases any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debts, liens, losses, demands, damages, costs, and causes of action, of whatever nature arising out of or relating to the financial obligations of the Travelers Policies and the Program Agreement, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether founded in fact or law or equity, that Travelers may have against the Debtors (collectively, the "**Travelers Released Claims**") and shall be barred from asserting any Travelers Released Claims; provided, however, that nothing in this release shall extend to disputes, claims, defenses and causes of action arising under this Agreement.  For the avoidance of doubt, upon the Effective Date

104658561.5

Travelers shall retain the Retained Collateral and may use, apply or otherwise dispose of the Retained Collateral in its sole discretion.

9.      As of the Effective Date and receipt of the Settlement Amount by the Debtor pursuant to Paragraph 4 of this Agreement, the Debtors hereby irrevocably waive and release any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debts, liens, losses, demands, damages, costs and causes of action, of whatever nature arising out of or relating to the Travelers Policies, the Program Agreement, or the Collateral, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether founded in fact or law or equity, that the Debtors may have against Travelers (collectively, the "**Debtors' Released Claims**") and shall be barred from asserting any and all Debtors' Released Claims; provided, however, that nothing in this release shall extend to disputes, claims, defenses and causes of action arising under this Agreement.  For the avoidance of doubt, the Debtors' Released Claims shall include, but not be limited to, causes of action arising under chapter 5 of the Bankruptcy Code, if any, arising out of or relating to the Travelers Policies, the Program Agreement, and/or the Collateral.

10.     All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the releases in Paragraphs 8 and 9.  Section 1542 of the California Civil Code reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Party giving a release hereby warrants that it is familiar with, has read and has consulted legal counsel of its choosing with respect to California Civil Code Section 1542 and that it understands that factual matters now unknown to it may have given or may hereinafter give rise to actions, legal or administrative proceedings, claims, liens, demands, debts, controversies, damages, costs, losses, liabilities and expenses which are presently unknown, unanticipated, and unsuspected, but are nevertheless intended to be encompassed within the release.

11.    Notwithstanding anything herein:

(a)    Travelers will continue to investigate, administer and, when appropriate, pay claims covered by the Travelers Policies;

(b)    the Agreement does not release the Debtor, or any other Insured under the Travelers Policies, from duties to cooperate with Travelers in the investigation and administration of claims, by continuing to deliver to Travelers, upon request, reasonably available information regarding the claims that are in the Debtor's, or any other Insured's, possession, custody, or control, and by authorizing third parties in possession of such information to deliver it to Travelers; and

(c)    nothing in this Agreement will be deemed:

(i)    to modify the coverage provided by the Travelers Policies or in any way to affect or to impair Travelers' rights or obligations under the Travelers Policies, including rights, defenses, and obligations concerning claims and coverage, which will be determined thereunder;

(ii)    to create or permit a direct right of action by any holder of any claim against Travelers or the Debtor;

6

(iii) to preclude or limit, in any way, the rights of Travelers to contest and/or litigate with any holder of any claim, the existence, primacy, and/or scope of available coverage under any alleged applicable Travelers Policy;

(iv) to relieve any holder of any claim from any obligation to file a proof of claim in the Bankruptcy Cases; or

(v) to preclude or limit, in any way, the Debtor's defenses to any existing or future claims by Travelers except to the extent released by this Agreement.

12. The Parties acknowledge and agree that this Agreement is entered into for the purpose of avoiding the expense, delay, and uncertainty of litigation regarding the Travelers Claim, the Dispute, and the Collateral, and that nothing contained herein shall constitute, be introduced, treated, deemed, or otherwise interpreted or construed as:

(a) an admission, waiver, evidence, or concession by any of the Parties hereto of any liability or wrongdoing relating to the Collateral; or

(b) evidence in any judicial or arbitration proceeding between the Parties, except to enforce or defend the terms of this Agreement or in defense of any claim released in whole or in part by this Agreement.

13. This Agreement is the entire agreement between the Parties with respect to the subject matter hereof. This Agreement supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein. No statements, promises, or representations have been made by any Party to any other, or relied upon, and no consideration has been offered, promised, expected, or held out other than as expressly provided for herein.

104658561.5

14.     The Parties each represents and warrants that the undersigned is fully authorized and empowered to execute and deliver this Agreement on behalf of, and to bind, each Party, as applicable, to the terms and conditions of this Agreement.

15.     Each Party hereto represents and warrants that it has carefully read this Agreement in its entirety; that it has had an adequate opportunity to consider it and to consult with any adviser of its choice about it; that it understands all of its terms; that it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this Agreement; that its undersigned representative is duly authorized to enter into this Agreement on its behalf; that it voluntarily assents to all of the terms and conditions contained herein; that by signing this Agreement it is bound by the terms and conditions contained herein; and that it is signing this Agreement voluntarily and of its own free will.

16.     In the event of any ambiguity in this Agreement, no inferences shall be drawn against any Party on the basis of authorship of this Agreement.

17.     No modification, amendment, or waiver of any of the terms or provisions of this Agreement shall bind any Party unless such modification, amendment, or waiver is in writing, has been approved by the Bankruptcy Court, and has been executed by a duly authorized representative of the Party against whom such modification, amendment, or waiver is sought to be enforced.  If any part of this Agreement is held to be unenforceable by any court of competent jurisdiction, the unenforceable provision shall be deemed amended to the least extent possible to render it enforceable and the remainder of this Agreement shall remain in full force and effect.

18.     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

104658561.5

19.     This Agreement shall be deemed to have been executed and delivered in the State of Connecticut and shall be governed by and construed in accordance with Connecticut law, without regard to its principles concerning conflicts of law.

20.     This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Agreement to present any copy, copies, or facsimiles signed by the Parties hereto.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

104658561.5

Dated: February __, 2020

| hhgregg, Inc.<br><br>By: _____<br>Name:<br>Title: | THE TRAVELERS INDEMNITY COMPANY; on behalf of itself and certain of its property casualty insurance and claim service company affiliates<br><br>By: _____<br>Name:<br>Title: |
| --- | --- |
| Gregg Appliances, Inc., as to the release in Paragraph 9 of this Agreement.<br><br>By: _____<br>Name:<br>Title: | |
| HHG Distributing, LLC, as to the release in Paragraph 9 of this Agreement.<br><br>By: _____<br>Name:<br>Title: | |

10